**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sun Life Assurance Company of Canada, | ) No. CV-08-0629-PHX-GMS |
| Plaintiff, | ) No. CV-08-0632-PHX-GMS<br>) (Consolidated) |
| vs. | ) **ORDER** |
| H. Thomas Moran, II, Court-Appointed Receiver of Lydia Capital Alternative Investment Fund, LP, | ) |
| Defendant/Third-Party Plaintiff, | ) |
| vs. | ) |
| Leon Bawden, et al., | ) |
| Third-Party Defendants. | ) |
| Sun Life Assurance Company of Canada, | ) |
| Plaintiff, | ) |
| vs. | ) |
| H. Thomas Moran, II, Court-Appointed Receiver of Lydia Capital Alternative Investment Fund, LP, | ) |
| Defendant/Third-Party Plaintiff, | ) |
| vs. | ) |
| Charles Hoover, et al. | ) |
| Third-Party Defendants. | ) |

Pending before the Court are the Motions to Dismiss of Third-Party Defendants Charles and Shirley Hoover (Dkt. # 85)[1] and Third-Party Defendants Leon and Clara Bawden, Charles and Deanne Beshears, and Beshears Agency (Dkt. # 100); the Motion for Leave to File Amended Answer Including Counterclaim and Crossclaim of Third-Party Defendants Leon and Clara Bawden, Charles and Deanne Beshears, and Beshears Agency (Dkt. ## 119, 125); and the Motion for Enlargement of Time to File a Supplemental Pleading of Third-Party Defendants Charles and Shirley Hoover (Dkt. # 121). For the reasons set forth below, the Court denies the Motions to Dismiss, grants the Motion for Leave to File Amended Answer, and grants the Motion for Enlargement of Time.

## BACKGROUND

Plaintiff Sun Life Assurance Company of Canada ("Sun Life") is a Canadian life insurance corporation with it principal place of business in Massachusetts. Defendant and Third-Party Plaintiff H. Thomas Moran II, is a citizen of Oklahoma and the court-appointed receiver for Lydia Capital, LLC,[2] and Lydia Capital Investment Fund, LP (collectively referred to as "Lydia Capital"). Plaintiff Sun Life's claims against Receiver Moran arise from life insurance policies issued by Sun Life insuring the lives of Third-Party Defendants Leon Bawden and Charles Hoover, which were eventually acquired by Lydia Capital.

In the lead case, Sun Life alleges that "[i]n or around December 2005 or early January 2006, Mr. Bawden, who was 79 at the time, was approached by [Third-Party Defendant] Charles P. Beshears of Retirement Planning Resources, LLC . . . who . . . told Mr. Bawden

---

[1]Third-Party Defendants Charles and Shirley Hoover have requested oral argument. (Dkt. # 45 at 1.) The request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991) (finding denial of a hearing not unfairly prejudicial where the party "had the opportunity to apprise the district court of any arguments it believed supported its position" by filing a memorandum of law and evidence).

[2]At all times relevant to this action, Lydia Capital, LLC, was allegedly the registered investment advisor to the hedge fund Lydia Capital Investment Fund, LP.

about a plan through which Mr. Bawden could take out a life insurance policy and immediately sell it for approximately $80,000." (Dkt. # 1 ¶ 21.) Sun Life further alleges that, consistent with this plan, Mr. Bawden completed a life insurance application with Sun Life in which Mr. Bawden identified his son, Reese Bawden, as the prospective owner and sole beneficiary of the policy. On May 18, 2006, Sun Life issued a $1 million life insurance policy on the life of Mr. Bawden ("the Bawden Policy"). Several months later, Reese Bawden submitted a request to change the owner and beneficiary of the Bawden Policy to the Leon Bawden Family Irrevocable Trust ("the Bawden Trust"). Sun Life alleges this was done to "conceal the fact that the Bawden Policy was intended for re-sale in the secondary market." (Dkt. # 1 ¶ 26.) Eight days later, the trustee of the Bawden Trust was changed to Deborah A. Wilcox of Third-Party Defendant Stamford Institutional Fund 2005A, LLC. The ownership and beneficiary interests in the Bawden Policy were subsequently transferred to Lydia Capital.

In the consolidated case, Sun Life alleges a similar scheme involving Third-Party Defendant Charles Hoover, Charles Beshears, Stamford Institutional Fund, and Lydia Capital. On July 6, 2006, Sun Life allegedly issued a $2.75 million life insurance policy on the life of Mr. Hoover ("the Hoover Policy"). In his life insurance application, Mr. Hoover identified himself as the prospective owner of the Policy, and his wife, Shirley Hoover, as the sole beneficiary. However, on October 3, 2006, Mr. Hoover submitted a request to change the owner and beneficiary of the Hoover Policy to the Hoover Irrevocable Life Insurance Trust ("the Hoover Trust"). Less than one month later, Sun Life received notification that the Trustee of the Hoover Trust had resigned and notice of the appointment of Deborah Wilcox of Third-Party Defendant Stamford Institutional Fund as successor trustee. As with the Bawden Policy, Lydia Capital subsequently acquired the ownership and beneficiary interests in the Hoover Policy.

On April 12, 2007, the Securities and Exchange Commission ("SEC") initiated an enforcement action against Lydia Capital and its principals for engaging in a fraudulent investment scheme through the sale of limited partnership interests in the Lydia Capital

Alternative Investment Fund. The SEC alleged that Lydia Capital failed to disclose to prospective investors that the assets of the Fund – life insurance policies – were essentially worthless because the policies were procured based upon misrepresentations by applicants and pursuant to a scheme involving The Stamford Group and Lydia Capital to procure policies on the elderly and then sell the policies on the secondary market.

After conducting an investigation, Sun Life filed its Complaints against Receiver Moran on April 2, 2008, asserting in each a single claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking "a judicial declaration that the [Bawden and Hoover] Polic[ies] w[ere] unsupported at the time of [their] issuance by any legally cognizable insurable interest and [are] therefore void *ab initio*." (Dkt. # 1 ¶ 38.) On November 3, 2008, Receiver Moran filed third-party complaints against the Hoovers and Bawdens, and other third-party defendants, including Stamford Institutional Fund 2005A, LLC, Stamford Portfolio Management, LLC, and The Stamford Group ("the Stamford defendants"), and Charles Beshears. The third-party complaints assert claims for breach of contract, express contractual indemnity, unjust enrichment, and recession; arising from Lydia Capital's acquisition of the ownership and beneficial interests in the Hoover and Bawden Policies. On April 27, 2009, the Stamford defendants amended their Third-Party Answers to assert breach of contract and unjust enrichment counterclaims against Third-Party Plaintiff Moran and several crossclaims against various other third-party defendants. (Dkt. ## 90, 91.)

On April 13, 2008, the Hoovers moved to dismiss Plaintiff Sun Life's Complaint in the lead case against Defendant Moran for lack of subject matter jurisdiction, and in the alternative, moved for dismissal for lack of personal jurisdiction and improper service. (Dkt. # 85.) Similarly, on May 8, 2009, Third-Party Defendants in the consolidated case moved to dismiss Sun Life's Complaint against Defendant Moran for lack of subject matter jurisdiction. (Dkt. # 100.) Both motions argue that this Court lacks subject matter jurisdiction over the entire action because Plaintiff Sun Life lacks standing to assert its declaratory claims against Defendant Moran. Additionally, on June 15, 2009, the third-party defendants in the consolidated case moved for leave to amend their answer to the third-party

1  complaint to include a third-party claim against Plaintiff Sun Life and a
2  counterclaim/crossclaim against Third-Party Plaintiff Moran and other third-party
3  defendants. (Dkt. # 119.)

**DISCUSSION**

**I.    Background on "Insurable Interest" Law and Life Insurance**

"An 'insurable interest' in the context of a life insurance policy is an interest in having the insured life persist, as opposed to an interest only in the loss of that life." *First Penn-Pac. Life Ins. Co. v. Evans*, 313 F. App'x 633, 636 (4th Cir. 2009) (citing *Grigsby v. Russell*, 222 U.S. 149, 155 (1911)); *see also* Ariz. Rev. Stat. § 20-1104(C) (defining "insurable interest as "a lawful and substantial economic interest in having the life, health or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value, by the death, disablement or injury of the individual insured"). Where an insurance policy is acquired by a person without an insurable interest in the insured life, it is widely held that the policy is a "wager policy" and is void as against public policy because "wager policies" are "speculative contracts on human life." *Warnack v. Davis*, 104 U.S. 775, 779, 782 (1877); *see also Conn. Mut. Life Ins. Co. v. Schaefer*, 94 U.S. 457, 460 (1876); *Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490, 492 (9th Cir. 1997); *Ky. Cent. Life Ins. Co. v. McNabb*, 825 F. Supp. 269, 272 (D. Kan. 1993); *Beard v. Am. Agency Life Ins. Co.*, 314 Md. 235, 258 (1988); *Knott v. State* ex. rel. *Guar. Income Ins. Co.*, 186 So. 788, 789-790 (Fla. 1939) ("Florida courts have long held that insurable interest is necessary to the validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and is void *ab initio* as against public policy."); *Gristy v. Hudgens*, 23 Ariz. 339, 347, 203 P.2d 569, 572 (1922); *Crossman v. Am. Ins. Co.*, 164 N.W. 428, 432 (Mich. 1917) (holding that an insurance policy "founded upon mere hope and expectation and without some interest in the property, or the life insured, are objectionable as a species of gambling, and so have been called wagering policies . . . and are therefore void.").

- 5 -

Accordingly, pursuant to Arizona law, "[a]ny individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person." Ariz. Rev. Stat. § 20-1104(A). However,

> [N]o person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when the contract was made, and insurable interest in the individual insured.

*Id.*

Third-Party Defendants contend that as long as the beneficiary at the time of policy issuance had an insurable interest, then the Policy is necessarily valid despite any subsequent transfers. (Dkt. # 130 at 7.) However, just because an insurable interest did in fact exist when a policy is issued, does not end the inquiry. In addition to circumstances where an initial beneficiary lacks an insurable interest, the Ninth Circuit, and other courts, have construed the "insurable interest" requirement to likewise be violated when the insured is working together with an assignee to acquire an insurance policy where the circumstances indicate that the assignee is the real purchaser of the policy. *Grigsby*, 222 U.S. at 156 (noting the distinction between invalid assignments "in which a person having an interest lends himself to one without any as a cloak" and valid assignments "where an honest contract is sold in good faith"); *McKee v. Penick (In re Al Zuni Trading Co.)*, 947 F.2d 1403, 1405 (9th Cir. 1991) (interpreting Arizona law to prohibit the "deliberate attempt to evade the requirement of an insurable interest"); *Evans*, 313 F. App'x at 636 n.3 (collecting cases where courts "concluded that . . . a third party must be involved in the procurement of [an] insurance policy to eliminate the insurable interest); *Travelers Ins. Co. v. Reiziz*, 13 F. Supp. 819, 820 (E.D.N.Y. 1935); Willison on Contracts § 17.5 (4th ed. 2007) ("in the absence of a prohibitory statute, a person may take out a policy on his own life, pay the premiums, and designate as a beneficiary any person he chooses, even though the beneficiary chosen would otherwise have no insurable interest in the life of the insured. Such a policy is not a wagering contract, unless the transaction is for the purpose of speculation and is mere cover

for a wagering transaction."). Although not in effect at the times relevant to this action, this judicial construction of "insurable interest" law was codified in Arizona in 2008. *See* Ariz. Rev. Stat. § 20-443.02 ("Intentionally practicing or planning to initiate a life insurance policy for the benefit of a person or entity that lacks an insurable interest and that, at the time of policy origination, has no insurable interest in the insured is a violation of § 20-1104.").

## II. Motions to Dismiss for Lack of Subject Matter Jurisdiction

Plaintiff Sun Life seeks to have the Hoover and Bawden Polices declared void *ab initio* on the basis that they are wagering contracts and against public policy. (Dkt. # 1 ¶ 38.) In the Answers to the Complaints, Receiver Moran denies that Plaintiff is entitled to the requested declaratory relief and denies the majority of Plaintiff's factual allegations. (Dkt. # 15 ¶¶ 1, 18-38.) Third-Party Defendants, in both the lead and consolidated cases, now move to dismiss Plaintiff Sun Life's Complaints pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the "entire action should be dismissed" because the Court lacks subject matter jurisdiction over Sun Life's Complaints. (Dkt. # 100 at 3.) Specifically, Third-Party Defendants contend that Plaintiff Sun Life lacks Article III standing because: (1) "there is no allegation of injury anywhere in [] Plaintiff's Complaint[s]," "there isn't any injury[,] and there can not [sic] be [any injury] in the future" (Dkt. # 85 at 5), and (2) there is "no actual controversy" between Sun Life and Receiver Moran (Dkt. # 122 at 2).

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal quotations omitted).

The Declaratory Judgment Act creates a federal remedy, but it is not itself a basis for federal jurisdiction. *See Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983). Therefore, before declaratory relief may be granted, federal subject matter jurisdiction requirements must be

met.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  In diversity cases, in addition to meeting the requirements of 28 U.S.C. § 1332, the declaratory judgment plaintiff must establish an actual controversy.  *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981).  The Declaratory Judgment Act specifically states that a federal court may "declare the rights and other legal relations" of parties to a "case of actual controversy."  28 U.S.C. § 2201.  "The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution."  *Societe de Conditionnement*, 655 F.2d at 943.  The party seeking the declaration bears the burden of establishing justiciability.  *Cardinal Chem. v. Morton Int'l*, 508 U.S. 83, 95 (1993).

Courts have viewed the restraints found in Article III as requiring that the suing party must have suffered an "injury in fact" in order to have standing.  *Valley Forge Christian College v. Americans United for Separation of Church & State Inc.*, 454 U.S. 464, 473 (1982).  An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted).  Additionally, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged act of defendant"[3] and "it must be likely, as

_____

[3]In their Reply brief, the Hoovers argue for the first time that "Sun Life cannot trace any injury to Lydia" because Lydia Capital was not involved with the acquisition of the Hoover Policy before July 6, 2006 – the date on which the Hoover Policy was issued. (Dkt. # 123 at 5.)  Notably, the receiver for Lydia Capital, Defendant Moran, filed a Response to the Hoovers' Motion to Dismiss (Dkt. # 114) in which he objects to the Hoovers' motion and argues that Sun Life does have standing to seek declaratory relief against Lydia Capital despite the arguments raised by Third-Party Defendants. (*Id.* at 4-6.)

Generally, "[t]he district court need not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  Nevertheless, the Hoovers' argument has no merit.  In its Complaint against the Hoovers, Sun Life alleges that Lydia Capital, through its agents, "procured life insurance policies on elderly individuals in whom Lydia Capital had no insurable interest."  (Case No. CV-08-0632 Dkt. # 1 ¶ 20.)  Additionally, Sun Life alleges that Lydia Capital "obtained full ownership of the Hoover Policy" "as planned from the beginning." (*Id.* ¶ 27.)  Because Sun Life seeks a declaration

- 8 -

opposed to merely speculative, that injury will be redressed by a favorable decision." *Id.* at 560-61.

Third-Party Defendants first argue that Sun Life failed to plead any injury in its Complaints and that it has not, and cannot, suffer any injury based on the alleged facts. Specifically, Third-Party Defendants contend that the factual allegations of the Complaints demonstrate that "there are only two possible courses of events concerning the future, and neither one of these possibilities causes injury to the Plaintiff." (Dkt. # 100 at 6.) The first possible course involves the scenario where insurance premiums are not paid and the Hoover and Bawden Policies lapse for lack of premium payment. (*Id.*) In this scenario, Third Party Defendants argue that "there is no injury to Sun Life . . . [and] [i]n fact it gains." (*Id.*) The second possibility involves the scenario where all premiums are paid, the insured dies, and Sun Life is forced to pay a death benefit to the beneficiary. In this scenario, Third-Party Defendants argue that the payment of death benefits is not an injury because "[Sun Life] would be paying the death benefit as a life insurance company . . . [which is] exactly the business in which Sun Life is engaged" and which is "exactly the type of loss associated with the business risk of being the issuer of life insurance policies." (*Id.*)

Third-Party Defendants' arguments, however, are unsupported by logic or legal authority. Absurd results would flow from the conclusion that an insurance company cannot suffer injury where a policy is obtained in violation of law merely because it "is exactly the type of loss associated with the business risk of being the issuer of life insurance polices." (Dkt. # 100 at 7.) While the potential loss associated with issuing an insurance policy is generally a bargained-for obligation, potential loss associated with insurance policies acquired by fraud or misrepresentation, or acquired in violation of law, is certainly not "exactly the type of loss" bargained for by an insurance provider. Merely because an insurer is in the business of acquiring and managing risk of loss on a large scale does not mean that

regarding the validity of policies currently owned by Lydia Capital, which were procured in accordance with a plan involving Lydia Capital, Sun Life has pled sufficient facts showing that its injury is fairly traceable to Lydia Capital.

insurers cannot ever be injured by obligations to service or pay claims on improperly obtained policies.

Third-Party Defendants argue, without authority, that Sun Life's Complaints fail to allege any "injury in fact" because "neither the word 'injury' nor 'injured' nor any derivative of either appears anywhere in [Sun Life's] ten (10) page Complaint." (Dkt. # 123 at 5.) Despite not using the word "injury" or any derivative or synonym of that word in its Complaints, Sun Life has alleged facts sufficient to support the conclusion that the initial acquisition of the Bawden and Hoover Policies violated Arizona law because the Policies were "issued to, at the behest of, and/or under the direction of, a party possessing no insurable interest" in the lives of Mr. Bawden and Mr. Hoover (Dkt. #1 ¶ 37), and were obtained as part of a "fraudulent investment scheme." (*Id.* ¶ 29). Because Arizona law prohibits wagering contracts, violation of this law would be "an invasion of [Sun Life's] legally protected interest," *Lujan*, 504 U.S. 560, and is a sufficient injury for purposes of standing. The injury of being obligated to maintain and service an illegally procured policy is exactly the type of concrete and actual injury sufficient for standing purposes. *See, e.g.*, *Phoenix Life Ins. Co. v. LaSalle Bank N.A.*, No. 2:07-cv-15324, 2009 WL 877684, at * 10 (E.D. Mich. Mar. 30, 2009) (involving legal action between a life insurance company and, among others, the transferee of life insurance policies in which the life insurance company sought a declaration that the policies were "null, void and rescinded *ab initio*" and "rescinded because no insurable interest arose in the transferees"); *Lincoln Nat. Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 884 (D.N.J. 2009) (involving legal action between a life insurance company, an insured, and the trustee of the trust that owned the policy and was the policy's beneficiary, seeking a declaration that the life insurance policy was void for lack of an insurable interest where the insured allegedly purchased policies using borrowed funds and with the intent to sell the policies to stranger investors in the secondary life insurance market); *Sun Life Assurance Co. of Canada v. Paulson*, No. 07-3877 (DSD/JJG), 2008 WL 5120953, at *1 (D. Minn. Dec. 3, 2008) (involving legal action between a life insurance company and, among others, the transferees of seven life insurance policies seeking

declaratory relief and rescission of the policies because the policies allegedly were "fraudulently obtained . . . with the intent to sell them at the conclusion of their contestability periods"); *First Penn-Pac. Life Ins. Co. v. Evans*, No. AMD 05-444, 2007 WL 1810707, at *1 (D. Md. June 21, 2007), *aff'd*, 313 F. App'x at 634-36 (involving legal action between a life insurance company, the legal title owner of a life insurance policy, and the receiver for the bankrupt owner of the policy where the insurer sought a declaration that the policy was rescinded and void under Arizona law); *cf. Paul Revere Life Ins. Co.*, 105 F.3d at 490 (involving legal action between a disability insurer and the insured seeking a declaration a disability insurance policy was void *ab initio* because the insured lacked an insurable interest).

Third-Party Defendants alternatively argue that there is no actual controversy between Sun Life and Receiver Moran that is ripe for adjudication until the insured dies and a claim is made on the policy. (Dkt. # 122 at 2-8.) In determining whether there is an actual controversy, the Court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree . . . ." *Md. Cas. Co.*, 312 U.S. at 273.

Here, Third-Party Defendants argue that "[t]here is no actual controversy, and thus no standing to bring a declaratory judgment action on an insurance policy, unless and until a claim is brought under that policy." (Dkt. # 122 at 2.) To support their contention that no actual controversy exists until a claim is brought under a policy, Third-Party Defendants cite

*Stalsberg v. New York Life Insurance Co.*, No. 2:07-CV-29 BSJ, 2007 U.S. Dist. LEXIS 66076 (D. Utah Sept. 5, 2007), *National Union Insurance Co. v. ESI Ergonomic Solutions*, 342 F. Supp. 2d 853, 863 (D. Ariz. 2004), and *Atlanta National Insurance Co. v. Atchison*, 938 F.2d 81, 83 (7th Cir. 1991). However, none of these cases support Third-Party Defendants' position.

In *Stalsberg*, the plaintiff, Ralph Stalsberg, applied for and was issued a life insurance policy on his own life by the defendant, New York Life Insurance Company. *Stalsberg*, 2007 U.S. Dist. LEXIS 66076, at *2. After the policy was issued, but before Mr. Stalsberg passed away or made any claim for insurance proceeds, New York Life sought declaratory relief against Mr. Stalsberg. *Id.* at *3, *6. Specifically, in their first claim, New York Life alleged that the policy "lack[ed] an insurable interest and is illegal under Utah law" and sought a declaration that it was "entitled to rescind" the policy. *Id.* at *3. In their second claim, New York Life sought a declaration "'that the Policy was issued in violation of Utah's insurable interest statute' and [an] 'order that, at the time that payment of the Policy is required, the proceeds of the Policy must be paid over to persons having an insurable interest in the life of Mr. Ralph Stalsberg.'" *Id.* On motion, Mr. Stalsberg argued that New York Life lacked standing under Article III to assert its second claim. *Id.* at *4. The court agreed that the *second claim* was not ripe for review because Mr. Stalsberg was still alive and no claim for insurance proceeds had been filed. The court reasoned that, given those facts, there was no actual controversy because a declaration "as to what should be done 'at the time that payment of the Policy is required' [was] premature." *Id.* at *6.

Here, Third-Party Defendants argue that, "[f]or purposes of standing and actual controversy, there is nothing to distinguish the present case from *Stalsberg*." (Dkt. # 122 at 3.) While the cases are clearly analogous, unlike the second claim asserted in *Stalsberg*, Plaintiff's Complaints do not request a declaration or advice as to what should be done at the time payment of the Policies are required. At times in its Response briefs, Sun Life states that the issue in dispute is "whether Sun Life has an obligation to pay benefits under the [Policies], given the circumstances under which [they were] procured" (Dkt. # 111 at 9), and

"unless a court order is obtained declaring the Hoover Policy void *ab initio*, Sun Life may have an obligation to pay death benefits on an extremely undesirable policy" (Dkt. # 111 at 7; Dkt. # 118 at 8). To the extent that Sun Life is seeking a declaration regarding its obligation to pay death benefits at some uncertain future time, that claim was not pled and is not ripe, as neither Mr. Bawden nor Mr. Hoover have died and no claims have been filed on the Polices. *See Stalsberg*, 2007 U.S. Dist. LEXIS 66076, at *4-6. However, similar to the first claim in *Stalsberg* which was not dismissed for lack of standing, Sun Life seeks a declaration as to the current legality of the Bawden and Hoover Policies and its ability to excise the allegedly illegal and fraudulent policies from its books. Those claims are sufficiently ripe for decision and will not be dismissed.

In *ESI* and *Atchison*, two insurance companies sought declarations of non-coverage in circumstances in which there was no indication that the parties disputed coverage, no claims had been maintained, and no threat of legal action had been made. *ESI*, 342 F. Supp. 2d at 862, *Atchison,* 938 F.2d at 83. In dismissing the claims for lack of an actual controversy, the courts reasoned that "[t]he requisite 'injury' – a claim for payment [] – neither occurred nor was it immediately threatened by any of [the insured's] actions." *ESI*, 342 F. Supp. 2d at 863; *Atchison*, 938 F.2d at 83. Therefore, in those, and similar cases, the alleged injury – a claim for payment – must necessarily exist to elevate the controversy above the hypothetical level.

However, unlike cases seeking premature declarations of coverage like *ESI* and *Atchison*, and unlike cases seeking declaration of hypothetical future rights like *Stalsberg*, Plaintiff Sun Life seeks a declaration of its present rights as to the validity of an allegedly illegally obtained life insurance policy. Sun Life's injury is not limited to a possible future claim for payment, but rather is centered on its ongoing obligation to maintain and service life insurance policies that were obtained in violation of Arizona law. Therefore, the relief sought by Plaintiff is not hypothetical in nature, but rather fully mature and redressable. *See, e.g.*, *Phoenix Life Ins. Co.*, 2009 WL 877684, at *10 (involving legal action in which a life insurance company sought declaratory relief on insurable interest grounds before the death

- 13 -

of the insured and before a claim had been made on the policy); *Lincoln Nat. Life Ins. Co.*, 596 F. Supp. 2d at 884 (same); *Sun Life Assurance Co. of Canada*, 2008 WL 5120953 at *1 (same); *First Penn-Pacific Life Ins. Co.*, 2007 WL 1810707, at *1 (same); *Stalsberg*, 2007 U.S. Dist. LEXIS 66076, at *2 (same); *cf. Am. Centennial Ins. Co. v. Sinkler*, 903 F. Supp. 408, 410 (E.D.N.Y. 1995) (holding that a legitimate controversy existed between an insurer seeking a declaration that an insurance policy is void *ab initio* and injured third parties even though the injured parties may decide not to seek recovery from the insurer).

In an analogous case, *Mayo v. Hartford Life Inc. Co.*, 220 F. Supp. 2d 714 (S.D. Tex. 2002), a Texas district court held that the existence of life insurance policies that allegedly lacked an insurable interest created a sufficiently immediate controversy for declaratory relief. The district court reasoned that an actual controversy fit for judicial review existed because the employees challenged "whether the mere existence of the policies violates Texas law, and whether the [e]mployers [] are now the legal owners of the [] policies on [the employees'] lives." *Id.* at 778. The court held that to delay ruling until the death of each plaintiff:

> would unnecessarily permit the potential violation to continue, thereby prolonging the very harms the insurable interest doctrine was designed to discourage, particularly the wagering on the insured's life. Thus, determination of the issue of whether the violation exists should not have to wait for the death of the insured. The insurable interest doctrine is prophylactic. There is no reason to delay a ruling on the declaratory relief the [] [p]laintiffs seek.

*Id.*

To conclude that there is no actual controversy fit for judicial review between Sun Life and Lydia Capital would similarly be to "unnecessarily permit the potential violation to continue, thereby prolonging the very harms the insurable interest doctrine was designed to discourage." *Id.* Because Sun Life sufficiently pled an injury in fact, and because an actual controversy exists between Sun Life and Lydia Capital, Third-Party Defendants' Motions to Dismiss for lack of standing are denied.

**III.    Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue**

Alternatively, Third-Party Defendants Charles and Shirley Hoover argue that, because they were joined pursuant to Federal Rule of Civil Procedure 14 and served more than one hundred miles from where the summons issued, service of process was improper and the Court lacks personal jurisdiction over them. (Dkt. # 85 at 8.) Third-Party Plaintiff Moran, however, argues that the one-hundred-mile rule found in Federal Rule of Civil Procedure 4(k)(1) does not render service improper or defeat personal jurisdiction over the Hoovers. (Dkt. # 114 at 7.)

Federal Rule of Civil Procedure 4(k)(1) governs the territorial limits of service of process in a diversity case. It states:

> Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
> (A)    who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located;
>
> (B)    who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued; or
>
> (C)    when authorized by federal statute.

Fed. R. Civ. P. 4(k)(1). The 1993 Advisory Committee Notes to this rule explain that "Paragraph (1) . . . explicitly authoriz[es] the exercise of personal jurisdiction over persons who can be reached under state long-arm law, the '100-mile bulge' provision added in 1963, [] the federal interpleader act . . . [or] federal legislation that may provide for nationwide or even world-wide service of process in cases arising under particular federal laws."[4] Therefore, as indicated by the rule's use of the disjunctive word "or" and by the Advisory

---

[4]In 1992, Paragraph (1) contained the fourth alternative establishing personal jurisdiction – when authorized under the federal interpleader act. *See* Fed. R. Civ. P. 4 advisory committee's note. In 2007, however, this alternative was "deleted as redundant in light of the general provision in (k)(1)(C) recognizing personal jurisdiction authorized by a federal statute." *See id.*

Committee Notes, Rule 4(k)(1) does not require that an impleaded extraterritorial party must be served in the manner described in subdivision 4(k)(1)(B) when the third-party may be served under a state's long-arm statute pursuant to subdivision 4(k)(1)(A). *See* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1127 (3d ed. 2002) ("[T]he 100-mile provision did not have a limiting effect on the territorial range of service on original parties, and did not dilute the authority of cases permitting unlimited extraterritorial service on third parties when service was made under a valid state or federal statute."); *see also Adams Dairy Co. v. Nat'l Dairy Prods. Corp.*, 293 F. Supp. 1164, 1167-68 (D.Mo. 1968) (rejecting the conclusion that service of third-party complaints must be made in accordance with the 100-mile rule when service is prescribed under state or federal law).

Thus, Third-Party Defendants Charles and Shirley Hoover may be served and the Court may exercise personal jurisdiction over them if they are subject to jurisdiction under Arizona's long-arm statute, Ariz. R. Civ. P. 4.2(a), which is co-extensive with federal constitutional standards. *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1110 (9th Cir. 2004). Here, Third-Party Defendants Charles and Shirley Hoover do not argue that they are not subject to this Court's jurisdiction under Arizona's long-arm statute, but only that they were not served in accordance with the one-hundred-mile rule. Because the Hoovers may be served pursuant to Rule 4(k)(1)(A), dismissal for failure to comply with Rule 4(k)(1)(B) is not warranted.

**IV.     Third-Party Defendants' Motion for Leave to Amend**

Third-Party Defendants Leon and Clara Bawden, Deanne and Charles Beshears, and the Beshears Agency move for leave to amend their Third-Party Complaint to: (1) deny paragraph one of the Amended Third-Party Complaint (Dkt. # 125 at 2); (2) assert a third-party counterclaim/crossclaim for declaratory relief against Third-Party Plaintiff Moran and the Stamford Defendants; and (3) assert a third-party claim for declaratory relief against

Plaintiff Sun Life.[5] (Dkt. ## 119, 125.) Neither Receiver Moran nor the Stamford defendants oppose the motion. Plaintiff Sun Life opposes only Third-Party Defendants' request to amend their responsive pleading to assert a claim for declaratory relief against it. (*See* Dkt. # 127.) Therefore, the Motion is granted to the extent Third-Party Defendants seek to deny paragraph one and seek to assert a counterclaim/crossclaim against Third-Party Plaintiff Moran and the Stamford Defendants.

Federal Rule of Civil Procedure 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In deciding the motion to amend, the Court "must be guided by the underlying purpose of Rule 15 – to facilitate decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (quotation and citation omitted). "Thus, Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Id.* (quotation omitted). This liberality "is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, LTD. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).

The Court may, however, deny a motion to amend if there is a showing of undue delay or bad faith on the part of the moving party, undue prejudice to the opposing party, or futility of the proposed amendment. *See Foman*, 371 U.S. at 182; *see also Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Generally, however, "this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Significantly, "[t]he party opposing amendment bears the

---

[5]Because Third-Party Defendants Charles and Shirley Hoover have yet to file a responsive pleading in this matter, and because of the pending motions to dismiss, the Hoovers move for an enlargement of time within which to file their supplemental pleading. (Dkt. # 121.) The motion is granted. Third-Party Defendants Charles and Shirley Hoover shall file their supplemental pleading on or before September 10, 2009.

burden of showing prejudice," futility, or one of the other permissible reasons for denying a motion to amend. *DCD Programs*, 833 F.2d at 187; *see Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988).

In their motion for leave to amend, Third-Party Defendants seek to amend their pleading to assert a third-party claim against Plaintiff Sun Life. Specifically, Third-Party Defendants seek a declaration that "Mr. Bawden had a valid insurable interest in his own life when the policy was issued" and "the Policy was and is, to the extent that it has not since lapsed, a valid and enforceable contract." (Dkt. # 125 Pt. 2 ¶¶ 15-16.) In opposing the motion, Plaintiff Sun Life asserts that the proposed amendment is futile because "the Bawdens and Beshears lack standing to bring such a [] claim against Sun Life concerning the validity of the Bawden Policy." (Dkt. # 127 at 3); *see also Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1087 (9th Cir. 2002) (holding that the district court did not abuse its discretion in denying leave to amend a complaint where standing was lacking and amendment would be futile).

As previously discussed, "[t]he 'actual controversy' requirement of the [Declaratory Judgment] Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution." *Societe de Conditionnement*, 655 F.2d at 943. Therefore, in order to seek declaratory relief against Plaintiff Sun Life, Third-Party Defendants must have suffered an "injury in fact" and must show "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of [Sun Life]." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). Additionally, Third-Party Defendants must satisfy several prudential considerations, including that they are asserting "[their] own legal rights and interests" rather than the rights and interests of third-parties. *Valley Forge Christian College*, 454 U.S. at 474.

Plaintiff Sun Life first argues that the Bawdens and Beshears lack standing to assert a declaratory claim against Sun Life because they "cannot demonstrate an 'injury in fact' that is fairly traceable to any conduct of Sun Life. (Dkt. # 127 at 6.) Third-Party Defendants, however, contend that their exposure to liability to Lydia Capital and others is the requisite

injury, and that this exposure to liability was caused by Sun Life's position on the validity of the Bawden Policy and the litigation it is pursuing against Receiver Moran. (Dkt. # 130 at 3.)[6] The proposed amended pleading alleges that: (1) Sun Life issued a life insurance policy to Mr. Bawden on May 18, 2006; (2) the Policy was "purchased on [Mr. Bawden's] own initiative"; (3) Sun Life seeks "to have the Bawden Policy declared 'void *ab initio*' for lack of an insurable interest; and (4) Third-Party Plaintiff Moran has asserted claims against the Bawdens and Beshears which could cause them to incur liability if the Bawden Policy is found to have lacked an insurable interest at the time it was procured. (Dkt. # 125 Pt. 2.) These allegations are sufficient to plead an injury in fact – the imminent threat of actual liability – that is fairly traceable to Sun Life's position on the validity of the Bawden Policy and the litigation it is pursuing against Receiver Moran. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 (1998) ("[T]he causation requirement in standing is not focused on whether the defendant 'caused' the plaintiff's injury in the liability sense; the plaintiff need only allege 'injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court.").

Sun Life additionally argues that the Bawdens and Beshears lack standing "because they do not assert their own rights and interests under the Bawden Policy." (Dkt. # 127 at 6.) Sun Life contends that because Third-Party Defendants do not allege that they retain any ownership or beneficial interest in the Bawden Policy, and do not dispute the fact that Defendant Moran has acquired complete ownership of and beneficial interest in the Bawden Policy, Third-Party Defendants are not seeking to assert their own rights and interests in the Bawden Policy, but rather the rights and interests of Defendant Moran and Lydia Capital. However, Third-Party Defendants do not seek a declaration that they are entitled to any

---

[6]Third-Party Defendants' Reply brief was filed approximately twenty-three days after the Response brief was filed by Sun Life. Local Rule 7.2(d) states, "The moving party . . . shall have five (5) days after service of the responsive memorandum to file a reply memorandum if that party so desires." Here, Third-Party Defendants were not granted an extension, nor did they request one. Late-filed briefs will not be considered.

1   rights or interests in the Bawden Policy, nor do they seek a declaration that any third-parties
2   are entitled to any rights in the Bawden Policy.  Rather, Third-Party Defendants seek a
3   declaration that the Bawden Policy was valid at the time it was initially procured in an effort
4   to shield itself from liability to Third-Party Plaintiff Moran.  Therefore, Third-Party
5   Defendants are asserting their own legal rights an interests in seeking declaratory relief
6   against Plaintiff Sun Life.

7        Because Third-Party Defendants have sufficiently pled standing to seek declaratory
8   relief against Sun Life in their proposed amended pleading, granting leave to amend would
9   not be futile.

10                              **CONCLUSION**

11       Plaintiff Sun Life has standing to seek declaratory relief against Defendant Moran as
12   it has properly pled an "injury in fact" and because an "actual controversy" exists between
13   the parties.  Similarly, Third-Party Defendants Leon and Clara Bawden, Charles and Deanne
14   Beshears, and Beshears Agency have standing to seek declaratory relief against Plaintiff Sun
15   Life.  Therefore, it would not be futile to grant leave to amend their pleading in this regard.

16       **IT IS THEREFORE ORDERED** that Third-Party Defendants' Motions to Dismiss
17   (Dkt. ## 85, 100) are **DENIED**.

18       **IT IS FURTHER ORDERED** that the Motion for Leave to Amend of Third-Party
19   Defendants Leon and Clara Bawden, Charles and Deanne Beshears, and Beshears Agency
20   (Dkt. ## 119, 125) is **GRANTED**.

21       **IT IS FURTHER ORDERED** that Third-Party Defendants Leon and Clara Bawden,
22   Charles and Deanne Beshears, and Beshears Agency shall file a revised amended pleading
23   consistent with this Order before **5:00 P.M.** on **September 10, 2009**.

24       **IT IS FURTHER ORDERED** that the Motion for Extension of Time of Third-Party
25   Defendants Charles and Shirley Hoover (Dkt. # 121) is **GRANTED**.

26   / / /

27   / / /

1    **IT IS FURTHER ORDERED** that Third-Party Defendants Charles and Shirley

2  Hoover shall file their responsive pleading before **5:00 P.M.** on **September 10, 2009**.

3        DATED this 11th day of August, 2009.

4

5

6                                            G. Murray Snow
                                      United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27